WILLIAMS, J.
It The defendant, L.L. Golson, Inc., appeals a judgment in favor of the plaintiffs, Rupert Madden and Judith Madden, recognizing their possession of land up to a fence that existed in November 2014, For the following reasons, we affirm.
FACTS
In January 1991, Rupert Madden, M.D., and his wife, Judith Madden (“Madden”), acquired tracts of land located in Sections 17,19 and 20, Township 14 North, Range 9 West, Red River Parish. L.L. Golson, Inc. (“Golson”), is the owner of a 348.57-acre tract of land in Sections 19 and 20, immediately south of the Madden property. At the time Madden acquired the land, there *1288 was an existing fence which had been in place for more than 30 years. The wire and post fence ran from east to west between the Madden and Golson tracts. In 2014, Golson commissioned a survey of its tract prior to the installation of new fencing. The survey showed that under the deeds the property line was the section line between Sections 17 and 20, north of the old fence. Golson then removed the original fence and bulldozed the vegetation between the fence line and the Section 17/20 section line to the north.
In December 2014, the plaintiff, Rupert Madden, filed a petition for possession, temporary restraining order, permanent injunction and damages against the defendant, Golson. The plaintiff alleged that the boundary between the parties’ tracts of land was established by the existing fence that had been in place for more than 30 years before it was removed by defendant. The original fence did not follow the section line as surveyed. Defendant’s peremptory exception of non-joinder of a party was granted and [ 2Judith Madden was added as a party plaintiff. The district court denied plaintiffs’ motion for partial summary judgment on the issue of possession. At trial, the issue was whether the activities of plaintiffs and their ancestor in title were sufficient to establish possession of the disputed area prior to the removal of the existing fence.
Following presentation of the evidence, the trial court conducted a visual- inspection of the property. In written reasons for judgment, the trial court found that the fence line between the parties’ tracts of land had remained in the same location in excess of 50 years at the time of defendant’s removal of the fence in 2014 and that there was insufficient evidence to support the defendant’s contention that a wagon road created a boundary or provided evidence of fencing sufficient to interrupt plaintiffs’ possession or use of the property up to the existing fence. The court further found that plaintiffs exercised • corporeal possession of the disputed strip of land based on activities including maintaining the fence line, cutting hay and hunting. The trial court rendered judgment recognizing the plaintiffs’ possession of the property and establishing the original fence line as the boundary between the parties’ tracts of land. Defendant appeals the partial final judgment.
DISCUSSION
The defendant contends the trial court erred in finding that plaintiffs exercised possession of the strip of land at issue and that defendant treated the old fence as the boundary between the parties’ tracts. Defendant argues that plaintiffs failed to satisfy their burden of proving corporeal possession up to the fence because they did not present evidence of public and unequivocal possession of the disputed strip of land.
¡¡¡Possession is the detention or enjoyment of a corporeal thing either movable or immovable. La. C.C. art. 3421. Possession is a matter of fact; nevertheless, one who has possessed a thing for over a year acquires the right to possess. La. C.C. art. 3422. To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. La. C.C. art. 3424. Corporeal possession is the exercise of physical acts of use, detention or enjoyment over a thing. La. C.C. art. 3425. One who possesses a part of an immovable by virtue of a title is deemed to have constructive possession within the limits of his title. In the absence of title, one has possession only of the area that he actually possesses. La. C.C. art. 3426.
The plaintiff has the burden of proving the essential elements necessary to maintain a possessory action. The requisite possession to support a possessory *1289 action is identical to the possession required to commence the running of acquisitive prescription. Strain v. Aaron, 49,647 (La. App. 2 Cir. 2/27/15), 162 So.3d 553. The possessor must have corporeal possession, or civil possession preceded by corporeal possession, to acquire a thing by prescription. The possession must be continuous, uninterrupted, peaceable, public and unequivocal. La. C.C. art. 3476. The question of whether acts constitute possession is a factual determination that will not be disturbed on appeal absent manifest error. Strain, supra.
In the present case, Carlton Corbin testified that in 2009, he was a landman with a pipeline company and was involved in obtaining a right of way on the Golson property. Corbin stated that a survey prepared for the pipeline company showed the section line between Sections 17 and 20 as the property boundary in the title description and indicated the location of the old fence south of the Section Í7/20 line. Cor-bin testified that part of the Uinitial agreement was for the pipeline company to remove the old fence and build a new fence along that section line. Corbin stated that the plaintiff objected to moving the location of the fence when he-was informed about the proposed work. Corbin stated that he reported plaintiff’s objection to Golson’s president, Harry Lawson, who said to install the pipeline south of the old fence. Corbin testified that the pipeline was then installed in conformity with the location of the old fence as the boundary between the tracts of land. Corbin stated that he personally saw the old wire and post fence that was indicated on the survey and that a lot of brush had grown around the fence. Corbin testified that he saw cows on the Golson tract to the south and that the fence was keeping the cows from entering the plaintiffs’ land.
Robert Davis, a professional land surveyor, testified that in November 2014, he was hired by defendant to perform a survey of the defendant’s property. Davis stated that under the deed description the boundary between the. Madden and Golson tracts was the Section 17/20 section line. Davis testified that when doing his preliminary survey work, he noticed that the location of the old fence- did not match the survey boundary. Davis explained that the survey did not indicate the location of the old fence because it had been removed prior to his completion of the survey. Davis testified that approximately one year later he met with Berley Lawson, an officer of Golson, at the property in question. Davis stated that they began at the “pine knot,” the place where four section corners meet, and walked east along the Section 17/20 section line. Davis testified that he saw evidence of a roadbed starting approximately 200 feet east of the pine knot and continuing along the section line. He described the roadbed as a “slight | ^depression” on the ground with brush growing up in the roadbed. Davis testified that he saw remnants of deteriorated fencing at several places to the north of the roadbed.
George McLemore testified that he was familiar with plaintiffs’ land because from 2003 to 2008 he had cut hay on the property. McLemore stated that he cut hay in the areas behind the house and the south side of the property. He testified that he cut as close to the old fence as possible, but could not cut right up against the fence because his equipment could not run over the thicket around the fence.
The plaintiff, Rupert Gary Madden, M.D., who was 61 years old at the time of trial, testified that he bought the land at issue from Pluma Madden, who was his grandmother. Madden stated that the, land was mostly pasture with some timber and was bordered by Golson’s land to the south and east. Madden testified that at the time *1290 of his purchase, the land was enclosed by a continuous fence made of wire and posts that had remained in the same location since he began visiting his grandmother on the property as a child. Madden stated that since buying the land, he had bush hogged and cut hay in the area near the old fence. He testified that his recreational uses of the property included hunting squirrel along the old fence and riding ATVs on the land near the fence. Madden stated that he annually walks the fence line around the tract checking the condition of the old fence and making repairs where necessary. Madden testified that in 2009, he spoke with Corbin about the pipeline installation and told him he did not have authorization to move the location of the existing fence. Madden stated that when he next spoke with Corbin he said that Golson would install the pipeline in accordance with the existing fence and the issue seemed settled. Madden testified thatlfihe did not know if there was ever a wagon road running along the Section 17/20 line, but “some humps and bumps” are visible on the ground in that area.
Greg Madden, the plaintiffs brother, testified that he had visited his grandmother’s property as a child and that he has consistently spent time on the land during the last 50 years. Madden stated that as long as he can remember, a wire and post fence running along the south side of the Madden land has separated the Madden and Golson tracts. Madden testified that his main activity on the property was squirrel hunting in the wooded area along that old fence.
Yvonne Snead, who was 84 years old at the time of trial, testified that her parents had sold a house to Pluma Madden. Snead stated that north of the house there was a road that ran generally east from Highway 783. Snead testified that as a child, she had rode in a wagon or walked along that road many times. She did not recall any fences along the side of the road and did not know who built the road or when. Snead testified that she last walked on the road approximately 50 years ago.
Ollie Madden, who was 89 years old, testified that Pluma Madden was his aunt and he had visited her house many times. Madden stated that near his aunt’s house a road ran east from Highway 783. Madden testified that in 1948 to 1949, he traveled that road frequently hauling hay and grain. He stated that the road was clay and rough with fences along each side. Madden testified that he had last used the road in approximately 1955.
Wiley Garrett, who was 81 years old, testified that he recalled a road that ran east from Highway 783 that he called a “section road.” Garrett stated that he had last walked on that road in approximately 1970 looking for |7old glass bottles and he could not say if there were fences along the roadside. Garrett testified that in 1970 there were no vehicles using the road, which was grown over with brush and had not been in use for a number of years.
Berley Lawson, who was 42 years old at the time of trial, testified that he is an officer of Golson and the son of Harry Lawson, the president of Golson. Lawson stated that he manages the cattle operation for Golson on land adjacent to the Madden tract. Lawson testified that his understanding was that there had been an old wagon road running generally along the section line with a fence on either side of the road. Lawson stated that the existence of the old road was indicated by a depression in the ground approximately 8 to 12 feet wide running east from the pine knot. He stated that the road meandered in certain places based on the terrain and deviated south around a small pond before turning back toward the north. Lawson testified that the old fence at issue ran approximately 6 to 12 feet from the south *1291 side of the road and that the Golson pasture was south of that fence. Lawson acknowledged that he had never used the wagon road during his lifetime and did not know who built the road or when. He stated that he had never seen a deer stand or timber cutting in the area north of the fence to the section line. Lawson testified that the land in that area south of the section line was thickly wooded except for the “pin oak flat” that is wet and “boggy.” Lawson stated that in 2009, he thought the pipeline company was going to build a new fence, but after Rupert Madden objected to changing the location of the fence the pipeline was then installed leaving the old fence in place. Lawson testified that before the survey was done in 2014, he did not know where the property line was located according to the deed descriptions. He agreed that prior to 2014, the old fence represented the | Rnorth boundary of the Golson tract and had remained in the same location during his lifetime. Lawson .stated that the old fence kept the Golson cattle out of the Madden tract. Lawson testified that near the section line he had found remnants of the fencing that he believed had run along the north side of the wagon road.
Harry Lawson, who was 72 years old at trial, testified that his grandfather had said the wagon road had basically followed along the 17/20 section line. Lawson stated that he had previously walked and ridden a horse on the wagon road. He testified that wagon ruts are still visible on the ground indicating the location of the road, but he did not know who had built the road or when. Lawson stated that in 2009, as president of Golson, he had spoken with Corbin about installing a pipeline and they had agreed that the pipeline company would build a new fence along the 17/20 section line, which the company’s survey showed was the boundary between the Madden and Golson tracts. Lawson testified that he heard from Corbin that Madden did not want the old fence moved and the pipeline was then installed with the old fence remaining in the same location. Lawson stated that the old fence separated the Golson cattle from the Madden tract. Lawson agreed that the old fence made of wire and posts was visible and remained in the same location separating the Madden and Golson tracts for a long period of time. Lawson acknowledged that the Maddens used their land up to the old fence line until 2014.
On appeal, defendant argues that because the old fence was part of a wagon road in the past the fence was not meant to be the boundary between the parties’ tracts of land. Initially, we note that even the witnesses who remembered a road gave conflicting testimony regarding whether that |9roadway was actually fenced on either side. In addition, the evidence demonstrates that whatever road existed had fallen into disuse for a period exceeding 40 years, whereas the old fence remained in the same location during that time period and functioned as the visible boundary between the parties’ tracts of land. The trial court weighed the testimony of the witnesses and visited the location of the land involved. In the reasons for judgment the court noted that the visible indication of the roadway did not follow the section line and that the surveyor could not correlate the path of the road to the location of the old fence to the south. Thus, the record supports the trial court’s finding that the evidence was insufficient to show that the overgrown roadbed had served as a boundary or restricted the plaintiffs’ access to and use of the strip of land up to the old fence.
The defendant also contends the trial court erred in finding that the plaintiffs exercised corporeal possession of the land at issue. Defendant argues that the plaintiffs did not prove actual possession of *1292 the disputed strip of land because their activities did not give defendant notice of their claim of possession up to the fence.
Actual possession must be either inch by inch possession or possession -within enclosures. An enclosure is any natural or artificial boundary. Article 3426, comment (d). For the purposes of acquisitive prescription, actual possession is determined according to the nature of the property. La. C.C. art. 3487, revision comment (c), The corporeal possession requisite in the situation of agricultural land is not the same as that in the case of woodland or swamp land. Ryan v. Lee, 38,352 (La. App. 2 Cir. 4/14/04), 870 So.2d 1137, writ denied, 2004-1531 (La. 10/1/04), 883 So.2d 991.
|, pH ere, the plaintiffs presented evidence that they used the property up to the fence in ways that are consistent with a wooded, wetland area, including hunting and walking along the fence line to maintain the fence. The authority cited by defendant does not support its contention that plaintiffs were required to mow, cut timber or plant crops in the disputed area to demonstrate possession. The testimony of McLe-more indicates that he cut hay for plaintiffs as close to the fence as possible given the wooded condition of the land.
Further, the testimony established that plaintiffs repaired the old fence as needed and the fence prevented the defendant’s cattle from entering plaintiffs’ land. The Lawsons testified that they were aware that the old fence had remained in the same location and functioned as the boundary between the adjacent tracts of land for more than 30 years. In addition, plaintiffs’ maintenance of the fence served as an act of possession by keeping the Golson cattle off of plaintiffs’ land.
The trial court heard the testimony and weighed, the evidence. Based upon this record, we cannot say the trial court was clearly wrong in finding that the plaintiffs exercised corporeal possession as owner of the disputed strip ,of land up to the old fence that existed in November 2014. Consequently, the plaintiffs are entitled- to be restored to possession of that land up to the original fence line. The assignments of error lack merit. In reaching this conclusion, we pretermit discussion of the defendant’s remaining assignment as to costs in the district court.
^CONCLUSION
For the foregoing reasons, the trial court’s -judgment as to possession is affirmed and this matter is remanded for further proceedings. Costs of this appeal are assessed to the appellant, L.L. Golson, Inc,
AFFIRMED.
BROWN, C. J., dissents'with written reasons.